IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORETTA CAPEHEART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Court No. 08 C 1423 |
| v. ) | |
| ) | Judge Manning |
| NORTHEASTERN ILLINOIS ) | |
| UNIVERSITY and MELVIN C. ) | Magistrate Judge Schenkier |
| TERRELL, ) | |
| ) | |
| Defendants. ) | |

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
RULE 12(b)(1) and 12(b)(6) MOTION TO DISMISS</u>**

Defendants, NORTHEASTERN ILLINOIS UNIVERSITY ("NEIU"), and MELVIN C. TERRELL ("Terrell") (collectively, "Defendants"), by their attorney, LISA MADIGAN, Illinois Attorney General, submit the following Memorandum of Law In Support of Their Motion to Dismiss. In further thereof, the Defendants state as follows:

**<u>INTRODUCTION</u>**

Plaintiff, Loretta Capeheart ("Capeheart"), filed a four count complaint against NEIU and Terrell for the alleged infringement of her right of free speech and for the alleged retaliation and defamation she suffered as a result of the exercise of that right. Specifically, in Count I, Capeheart brings a claim for "injunctive relief" against NEIU. However, because Capeheart fails to identify any violation of state or federal law in Count I, the basis for this claim is unclear. In Counts II and III, Capeheart seeks damages against Defendant Terrell for the state law claims of defamation *per se* and defamation *per quode*, respectively; and in Count IV, Capeheart seeks injunctive relief against NEIU and Terrell for a state law claim for retaliation, as well as damages against

1

Terrell. Defendants seek dismissal of Capeheart's Complaint pursuant to Rule 12(b)(1) on the basis that her claims against NEIU and Terrell in his official capacity are barred by the Eleventh Amendment and pursuant to Rule 12(b)(6) on the basis that Capeheart has failed to state a claim for retaliation and Terrell is entitled to absolute immunity from her defamation claims.

## ALLEGATIONS

Capeheart is a tenured associate professor in the Department of Justice Studies at NEIU and has been employed at NEIU since September 2002. (Complaint, ¶ 3). Capeheart has been active in promoting minority rights, particularly those of Latinos, and in opposing the war in Iraq. (Complaint, ¶ 8). She is a faculty advisor to a University club that leaflets the military and CIA recruiters when on campus for open job fairs. (Complaint, ¶ 8).

NEIU is an institution of higher learning, which offers more than 70 undergraduate and graduate programs in the arts, sciences, education, and business and is attended by approximately 12,000 students in the Chicago area. (Complaint, ¶ 6). Terrell is the Vice President of Student Affairs at NEIU. (Complaint, ¶ 7). Various offices of the University report to Terrell, including health services, public safety and the dean of students. (Complaint, ¶ 7). Terrell is one of four principal decision-makers at NEIU, the others being the President, the Provost, and the Vice President for Finance and Administration. (Complaint, ¶ 7).

Capeheart believes that NEIU and Terrell have been unhappy with her activist activities. (Complaint, ¶ 8). In September of 2006, NEIU hosted the Illinois Legislative Latino Caucus hearing on its campus, which Capeheart attended as a speaker and

participant. (Complaint, ¶ 9). At the conference, Capeheart was critical of NEIU's efforts in recruiting and retaining Latino faculty members and students. (Complaint, ¶ 9). The Provost disagreed with Capeheart with regard to NEIU's efforts in attracting and retaining Latino faculty members and expressed displeasure with Capeheart's criticisms of NEIU. (Complaint, ¶ 10).

On February 28, 2007, two members of the club that Capeheart advises were arrested for attempting to attend a CIA student recruitment meeting. (Complaint, ¶ 120). The arrests became the subject of campus and community interest, and on March 12, 2007, a meeting of the NEIU Faculty Council for Student Affairs was held on NEIU's main campus. (Complaint, ¶ 13). Capeheart attended as an elected member of that group, and asked Terrell several questions relating to the arrest of the students because Terrell has supervisory responsibility for the campus police employed by NEIU as its public safety department. (Complaint, ¶ 13). Capeheart also complaint that the arrests were a pattern of harassment against students who were anti-war but otherwise expressing their views by means of a peaceful protest. (Complaint, ¶ 14). Terrell stated that any problems on the campus were not the result of the administration, but of Capeheart and the students she was advising. (Complaint, ¶ 15). Terrell then stated that Capeheart was the subject of interest for the police, stating that a student had filed "stalking" charges against Capeheart with the campus police when, in fact, no "stalking" charges had been filed against Capeheart. (Complaint, ¶ 17). In addition, Terrell and other members of the administration said that Capeheart was responsible for the actions of the students who were arrested on February 28, 2007, though the protest of the

3

February 28, 2007 job fair event was not an organized activity of the club that she sponsored and Capeheart was not present at the event. (Complaint, ¶ 18).

Subsequent to these events, in mid-July 2007, Capeheart was elected by her department to be chair. (Complaint, ¶ 19). However, the Provost refused to appoint Capeheart as chair in retaliation for her exercise of free speech and as a result of the false allegations of "stalking" made by Terrell. (Complaint, ¶ 19). NEIU placed the Justice Studies Department "in receivership" and instituted a search for an outside chair. (Complaint, ¶ 19). When the department recommended that Capeheart lead the search committee, the administration refused to appoint her to do so, and refused to appoint her as department coordinator. (Complaint ¶ 19). Plaintiff further alleges that in retaliation for her exercise of her free speech rights and as a result of Terrell's false accusations, Capeheart was denied a faculty excellence award for the year 2007. (Complaint, ¶ 21).

## STANDARD FOR MOTION TO DISMISS

When considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), or challenges to the court's subject matter jurisdiction under 12(b)(1), the court takes the allegations in the complaint as true, viewing all facts-as well as any inferences reasonably drawn therefrom-in the light most favorable to the Capeheart. *Patel v. City of Chicago,* 383 F.3d 569, 572 (7th Cir. 2004). To state a claim under federal notice pleading standards, a complaint must set for a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Factual allegations are accepted as true and need only give "fair notice of what the…claim is and the grounds upon which it rests." *EEOC v. Concentra Health Serv., Inc.,* 496 F.3d 773, 776-77 (7th Cir. 2007), quoting *Bell Atlantic Corp. v. Twombly,* 127

4

S.Ct. 1955, 1964 (2007). However, the "allegations must plausibly suggest that the Capeheart has a right to the relief, raising that possibility above a 'speculative level'.…" *Id.*, *quoting Bell Atlantic,* 127 S.Ct. at 1965, 1973 n. 14. Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" *Killingsworth v. HSBC Bank Nevada,* 507 F.3d 614, 618 (7th Cir. 2007), *quoting Bell Atlantic,* 127 S.Ct. at 1974.

## ARGUMENT

I.   **PLAINTIFF'S CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT.**

   **A. Plaintiff's Federal Claims for Injunctive Relief Against NEIU Must Be Dismissed.**

As previously noted, the basis for Capeheart's claim for injunctive relief in Count I is unclear. To the extent that Count I of Plaintiff's Complaint is premised on a violation of federal law, Capeheart=s claim must be dismissed pursuant to the Eleventh Amendment. In general, a suit brought against a state agency is proscribed by the Eleventh Amendment, regardless of the nature of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). Specifically, the Eleventh Amendment provides A[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United Sates by Citizens of another state, or by Citizens or Subjects of any Foreign State.@U.S. Const. Amend. XII. While the literal reading appears not to include suits by a citizen against the citizen=s own state, case law has interpreted the Eleventh Amendment immunity to apply to all suits against a state, regardless of one=s citizenship. *Pennhurst v. Halderman*, 465 U.S. 89 (1984).

The Eleventh Amendment bar to federal jurisdiction over a state and state agencies has been reaffirmed many times. See *e.g., Jensen v. State Board of Taz Commissioners of State of Indiana*, 763 F.2d 272, 276 (7th Cir. 1985) (suits against nonconsenting state or one of its agencies or departments is "clearly proscribed" by the Eleventh Amendment); *Moore v. State of Indiana*, 999 F.3d 1125, 1128 (7th Cir. 1993); *Nelson v. LaCrosse County Dist. Atty. (State of Wisconsin)* 301 F.3d 820, 827, n.7 (7th Cir. 2002). The only exception to Eleventh Amendment immunity is if the state consents to suit, or if Congress overrides the Eleventh Amendment by specifically and unequivocally legislating under another constitutional grant of authority. See *Tennessee v. Lane,* 541 U.S. 509 (2004); *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). As the State of Illinois has not consented to suit and there has been no Congressional override, NEIU is immune from suit, and Plaintiff's claims against it must be dismissed.

Finally, a state agency is not a "person" within the meaning of 42 U.S.C. § 1983 and therefore cannot be sued. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Collier v. Illinois Dept. of Human Rights*, 221 F.3d 1338 (7th Cir. 2000); *Johnson v. Supreme Court of Illinois*, 165 F.3d 1140, 1141 (7th Cir. 1999). Therefore, this court lacks jurisdiction to enter any relief against NEIU and in Capeheart's favor.

### B. Plaintiff's State Law Claims Against NEIU and Terrell Must be Dismissed.

In addition to any federal claims, Capeheart's state law claims against NEIU must also be dismissed, as well as Capeheart's state law claims against Terrell, to the extent they are brought against him in his official capacity.[1] A suit against a state official in his

---

[1] Capeheart fails to identify whether her claims against Terrell are brought against him in his individual or official capacity. For purposes of this paper, it is assumed that Capeheart's claims against Terrell are against him in his official capacity as "Vice President of Student Affairs at NEIU." (Complaint, ¶ 7).

6

or her official capacity is not a suit against the official but rather a suit against the state. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989). The Eleventh Amendment bars pendent state-law claims against a State, its agencies, or state officials in their official capacities. *See, e.g., Pennhurst*, 465 U.S. at 118, 121 ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." ); *Oneida County, N.Y. v. Oneida Indian Nation of New York State*, 470 U.S. 226, 251 (1985) (holding that state law claim against the state was barred by Eleventh Amendment); *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 528 (7th Cir.1988) (recognizing that "under Pennhurst the district court may not use (its view of) state law as the basis of an injunction against state officials who hold a different interpretation of state law." ). There is no "greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106. Under this authority, Capeheart's state-law claims (damages and equitable) against NEIU and against Terrell in his official capacity must be dismissed as barred by the Eleventh Amendment.

**II.    PLAINTIFF'S DEFAMATION AND RETALIATION CLAIMS ARE BARRED BY STATE SOVEREIGN IMMUNITY**

In addition to Eleventh Amendment immunity, Plaintiff's state law defamation and retaliation claims are also barred by the doctrine of state sovereign immunity. State sovereign immunity bars tort actions brought against the state. *See Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001); *Benning v. Bd. of Regents*, 928 F.2d 775, 778-79 (7th Cir. 1991) (stating that "State rules of immunity govern actions in federal court alleging violations of state law"). The Illinois State Lawsuit Immunity Act (745 ILCS 5/1) provides that the State of Illinois is immune from suit in any court, except as provided in

7

the Illinois Court of Claims. The Court of Claims Act vests jurisdiction over state tort claims against the State in the Illinois Court of Claims. (708 ILCS 505/8). Therefore, this Court lacks jurisdiction over Plaintiff's retaliation claim against NEIU, as well as Plaintiff's defamation and retaliation claims against Terrell, to the extent they are brought against him in his official capacity.

### III. PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ESTABLISH AN EXISTING CASE OR CONTROVERSEY AND SHE IS NOT ENTITLED TO MANDAMUS RELIEF

In addition to being barred by the Eleventh Amendment and state sovereign immunity, Capeheart's claims for injunctive relief must also be dismissed because Capeheart fails to establish an existing case or controversy required to obtain injunctive relief. Here, Capeheart claims that unless enjoined, NEIU and Terrell will continue to violate her free speech rights and retaliate against her for the exercise thereof. (Complaint ¶ 37). When seeking injunctive or declaratory relief, a plaintiff must establish that he is in "*immediate danger* of sustaining some direct injury." *Feit v. Ward,* 886 F.2d 848, 857 (7th Cir. 1989)(emphasis added). Past exposure to illegal conduct is not enough…there must be a continuing harm or reasonable likelihood of such harm reoccurring in the future. *See e.g., City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983). A plaintiff must demonstrate an ongoing injury or a threat of future injury. Absent such a showing, plaintiff cannot satisfy the "case or controversy" requirement of Article III. *Golden v. Zwickler,* 394 U.S. 103, 109 (1969). The Northern District of Illinois has recognized that "while a plaintiff who has been constitutionally harmed can bring a § 1983 action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise

8

injured in the future." *McGuire v. Chicago*, Case No. 00C8115, 2001 U.S. Dist. LEXIS 15713 (N.D. Ill. Sept. 28, 2001)(*citing Bledsoe v. City of Chicago*, 1996 U.S. Dist. LEXIS 13724, at *14 (N.D. Ill 1996)). Although past wrongs may be evidence that future violations are likely to occur, they must be accompanied by other evidence to show a sufficient likelihood that the plaintiff will be wronged later in a similar way. *See Sierakowski v. Ryan*, 223 F.3d 440, 444 (7th Cir. 2000).

Capeheart's claims are insufficient to state a claim for injunctive relief. Although Capeheart vaguely asserts that the Defendants will continue to violate her free speech rights and retaliate against her unless they are enjoined from doing so, she fails to provide any factual basis for this allegation, fails to provide any evidence to show a sufficient likelihood that she will be wronged later in a similar way sometime in the future, (let alone in the *immediate* future), and fails to establish any "continuing" violation. "Unadorned speculation will not suffice to invoke the federal judicial power." *Shakman v. Dunne,* 829 F.2d 1387, 1394 (7th Cir. 1987) (*citing Simon v. Eastern Ky. Welfar Rights Org*. 426 U.S. 26, 44 (1976)). Because Capeheart has not alleged facts sufficient to rise above a speculative level, her claims for injunctive relief must be dismissed.

Finally, Capeheart also seeks an order requiring NEIU to appoint Capeheart as chair of the Justice Studies Department. (Complaint, pg. 6). Again, it is unclear whether this claim is brought pursuant to state or federal law. Regardless, as discussed above, it is barred by the Eleventh Amendment. In addition, Capeheart is not entitled to such relief.

Mandamus is an extraordinary remedy. "A party seeking a writ of mandamus shoulders the burden of showing that a right to relief is clear and undisputable." *Banks v. Secretart of the Ind. Family and Social Serv. Admin.,* 997 F.2d 231, 244 (7th Cir. 1993).

As such, the Seventh Circuit has explained that this means that "mandamus jurisdiction is only available under exceptional circumstances of clear illegality." *Id.* (Internal quotations omitted.); *Allgood v. City of Chicago,* 2006 WL 2682302 * 4 (N.D. Ill. 2006). In addition, "A writ of mandamus will not lie to direct the manner of performance of an action which requires the exercise of discretion." *Dadian v. Village of Wilmette,* 1999 WL 299887 (N.D. Ill. 1999), *citing Freeman v. Lane*, 129 Ill.App.3d 1061, 1063, 473 N.E.2d 584, 585 (3d Dist.1985). In fact, a writ of mandamus is only "available where the duty is non-discretionary, or ministerial, and where the petitioner has shown a clear right to relief requested." *Id.* Mandamus "should not be used in doubtful cases; if there is evidence to support the official action, the writ must be refused." *Holland v. Quinn*, 67 Ill.App.3d 571, 573, 24 Ill.Dec. 325, 385 N.E.2d 92 (1st Dist.1978). Mandamus jurisdiction can only be invoked when: (1) the Capeheart has a clear right to the relief sought; (2) the defendant has a clear duty to perform; (3) no other adequate remedy is available. *Blaney v. United States,* 34 F.3d 509, 312 (7th Cir. 1994).

Capeheart's Complaint fails to plead or establish the required elements for a writ of mandamus for the following reasons. First, Capeheart has failed to plead any facts that establish Capeheart has a "clear right" to be appointed as chair of the Justice Studies Department. Second, Capeheart fails to name any defined, non-discretionary duties that NEIU had a clear duty to perform. Lastly, Capeheart has not demonstrated that there is no other adequate remedy available to her. As such, Capeheart's request for mandamus relief must be dismissed.

IV.  **TERRELL HAS ABSOLUTE IMMUNITY FROM PLAINTIFF'S DEFAMATION CLAIMS FOR STATEMENTS MADE WITHIN THE SCOPE OF HIS OFFICIAL DUTIES**

Capeheart's defamation claims against Terrell in Counts II and III are barred by the governmental official's immunity doctrine. It has been historically recognized that the court will grant a government official absolute immunity from civil defamation suits for statements made within the scope of his employment. *Barr v. Matteo,* 360 U.S. 564, 570-74 (1959). Illinois courts have likewise held that governmental officials' statements are subject to absolute privilege when they are made within the course of the official's duties. *See Blair v. Walker,* 349 N.E. 2d 385, 388-389 (1976) (finding that the governor was protected by an absolute privilege from a civil defamation action when statements made to the press were related to matters committed to his responsibility). The defense of absolute immunity is not limited to elected officials or high-ranking officers. Rather, Illinois courts have applied the privilege to various lower level officials. *See, e.g., Dolatowski v. Life Printing & Publishing Co.,* 554 N.E.2d 692 (1st Dist. 1990) (deputy police superintendent); *Morton v. Hartigan,* 495 N.E.2d 1159 (1st Dist. 1986) (division chief in the Attorney General's Office); *Harris v. News-Sun,* 646 N.E.2d 8 (2nd Dist. 1995) (police detective); *Haskell v. Perkins,* 148 N.E.2d 625 (1958) (school district's architect). Furthermore, the privilege is absolute and cannot be overcome by a showing of improper motivation or knowledge or falsity. *Blair,* 349 N.E.2d at 387.

In this case, it is clear from the face of Capeheart's Complaint that Terrell's allegedly defamatory statements were made in the course of his official duties and were related to matters committed to his responsibility. Capeheart alleges that Terrell, the Vice President of Student Affairs, made defamatory statements at a meeting of the

11

Faculty Council for Student Affairs. (Complaint, ¶ 7, 14-17). Capeheart also states that at that meeting, she complained about the use of campus police to arrest students engaged in an allegedly peaceful protest of the CIA event and asked Terrell several questions related to the students' arrest *specifically because Terrell had supervisory responsibility over the campus police.* (Complaint ¶ 13). Terrell's statements were made in response to Capeheart's questions and concerns about the students' arrest, which Capeheart admits "became the subject of campus and community interest," and clearly concerned matters over which he had supervisory responsibility by virtue of his position as Vice President of Student Affairs and as the individual to whom the campus police reported. (Complaint ¶ 13, 14-16). Taking Capeheart's Complaint as true, there is no question that Terrell was acting within the scope of his official duties when he made the allegedly defamatory statements. Although Capeheart claims that the statements were made with malice, immunity still applies when, as here, an officer is acting in his official capacity. *See Blair,* supra. Consequently, Terrell's statements are subject to absolute privilege, and Capeheart's defamation claims must be dismissed.

## V.    PLAINTIFF FAILS TO STATE A RETALIATION CLAIM AGAINST TERRELL

In addition to being barred by the Eleventh Amendment and state sovereign immunity, Capeheart's state law claim for retaliation against Terrell must also be dismissed because Capeheart fails to state a claim upon which relief can be granted. In Count IV, Capeheart alleges that NEIU and Terrell rejected her election as chair of her department, failed to provide her with a faculty excellence award, and refused to appoint her as department coordinator, all in retaliation for the exercise of her free speech rights under Article I, § 4 of the Illinois Constitution. (Complaint, ¶ 36). Yet in her

Complaint's statement of facts, Capeheart states that the *Provost* refused to appoint her as chair in retaliation for her exercise of free speech and "*the administration*" refused to appoint her as department coordinator in retaliation for her exercise of free speech and as a result of the false allegations of "stalking" made by Terrell. (Complaint ¶ 19)(emphasis added). Of course, neither the Provost nor "the administration" are named defendants in this action. Further, while Plaintiff attributes her failure to be appointed department coordinator in part to Terrell, Plaintiff also states that at the meeting of the Faculty Council on Student Affairs, other members of "the administration" (which Capeheart alleges refused to appoint her as department coordinator), expressed their belief that Capeheart was responsible for the actions of the students who were arrested. (Complaint, ¶ 18). Capeheart's Complaint is therefore unclear as to who failed to appoint her as chair, who failed to appoint her as department coordinator, and why. Due to Capeheart's contradictory and insufficient factual assertions, Capeheart's Complaint fails to comply with the pleading requirements set forth in *Bell Atlantic v. Twombly,* 127 S.Ct. at 1974; namely, that a complaint contain "enough facts to state a claim to relief that is plausible on its face." As such, Plaintiff's claims against Terrell must be dismissed.

VI.  **PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED PURSUANT TO 28 U.S.C. § 1367(a)**

Pursuant to 28 U.S.C. § 1367(a), when the Court has original jurisdiction over a federal claim, the Court also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). When the claim over which the court has original jurisdiction is dismissed, however, the court may decline to exercise supplemental jurisdiction over the remaining state claims. 28 U.S.C. § 1367(c)(3).

When a state law claim is appended to a federal claim that confers original jurisdiction on the federal courts, "the sensible presumption [is] that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims." *Williams Elec. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (internal citations omitted).  This presumption is based on the fact that "[s]ubstantial judicial and party resources will probably not have been expended on the litigation, and so the economies from retaining jurisdiction over the state-law claims will be slight." *Id.*; *see also Redwood v. Dobson*, 476 F.3d 462, 467 (7th Cir.2007) ( "A court that resolves all federal claims before trial normally should dismiss supplemental claims without prejudice." ).  The considerations supporting the presumption against retaining supplemental jurisdiction apply here.  To the extent that Count I of Capeheart's Complaint does state a federal cause of action and in the event the Court grants the Defendants' motion with respect to Count I for lack of subject matter jurisdiction, the Court should then decline to exercise supplemental jurisdiction over the remaining state law claims and should dismiss them without prejudice.  To the extent the Court should find that Count I fails to state a federal cause of action, the Court should likewise dismiss Plaintiff's Complaint for lack of original jurisdiction.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants NORTHEASTERN ILLINOIS UNIVERSITY and MELVIN C. TERRELL respectfully request that this Honorable Court grant their motion and dismiss Capeheart's claims against them with prejudice and in their entirety.

| | |
|---|---|
| LISA MADIGAN<br>Illinois Attorney General | Respectfully submitted,<br><br>/s/ Kathleen L. Ford<br>KATHLEEN L. FORD<br>Assistant Attorney General<br>General Law Bureau<br>103 W. Randolph St., 13th Fl.<br>Chicago, IL 60601<br>(312) 814-5160<br>kford@atg.state.il.us |

## CERTIFICATE OF SERVICE

    I hereby certify that on May 12, 2008 I electronically filed the above document, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Kathleen L. Ford