IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LORETTA CAPEHEART,    )
        Plaintiff,    )
    )
v.    )    No. 08 CV 1423
    )    Judge Blanche M. Manning
NORTHEASTERN ILLINOIS    )
UNIVERSITY, and MELVIN C.    )
TERRELL, individually,    )
        Defendants.    )

**MEMORANDUM AND ORDER**

Plaintiff Loretta Capeheart contends that she was subjected to public contempt and a damaged reputation for her role in student protests at Northeastern Illinois University, where she is a professor in the Department of Justice Studies. Among those she has sued is Melvin Terrell, a university vice-president who oversaw student affairs and campus police. Capeheart alleges that during a meeting of the Faculty Council, Terrell falsely stated that Capeheart had been charged with stalking a male student. Capeheart alleges that the statement was defamatory per se (Count II) and per quod (Count III). She also alleges that Terrell's statement was made in retaliation for exercising her right to free speech under the Illinois constitution (Count IV), and contributed to the decision of his co-defendants, university president Sharon Hahs and provost Lawrence Frank, to reject her election as chair of her department, deny her a faculty excellence award, and withhold an appointment as department coordinator.

Terrell has moved to dismiss all of the claims against him. *See* Fed. R. Civ. P. 12(b)(6). For the following reasons, the motion is denied.

**BACKGROUND**

The following facts are drawn from Capeheart's Second Amended Complaint and are accepted as true for purposes of resolving the motion to dismiss. *See Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). Capeheart is a tenured professor and is the faculty advisor to a student club that distributes leaflets opposing efforts by the military and the CIA to recruit students at campus job fairs. In late February 2007, campus police arrested two members of this student club for attempting to attend a recruitment meeting that the university hosted and at which the CIA appeared. Capeheart did not attend the event, and the protest was not an activity organized by the student club.

On March 17, 2007, Capeheart attended a regularly-scheduled meeting of the Northeastern Faculty Council for Student Affairs. Capeheart had been upset about the arrest of students at the CIA event, and used the occasion of the council meeting to speak out. Capeheart directed some of her comments to then-student affairs vice-president Melvin Terrell, who oversaw campus police. Capeheart complained that the arrests by campus police were part of a pattern of harassment by the Northeastern administration against students who peacefully protested the Iraq war.

In response to Capeheart's comments, Terrell told those in attendance that the campus police were not to blame for the incident, but rather that Capeheart and the students she advised were solely responsible for the altercation. Terrell also accused Capeheart of being the target of a police investigation based upon a student's allegations that Capeheart was stalking the student.

In mid-July 2002, members of the Justice Studies Department faculty elected Capeheart to be their department chairperson. However, the university administration, allegedly aided by

Terrell, did not appoint Capeheart as chair of the department. Instead, the chair position was placed in receivership and Northeastern instituted a search for an outside chair. Against the Justice Studies faculty's recommendations, the administration refused to appoint Capeheart as the leader of the search committee or as department coordinator. Additionally, Capeheart alleges that although she was eligible for a faculty excellence award in 2007, the administration refused to honor her in retaliation for her exercise of her right to free speech.

In his motion to dismiss, Terrell argues that the defamation claims in Counts II and III must be dismissed because the statements at issue were made within the course of his official duties and, therefore, he is entitled to absolute immunity. As for the retaliation claim in Count IV, Terrell argues that the claim must be dismissed because (1) he was not personally involved in the decision not to seat Capeheart as department chair and, in any event, (2) conduct that consists solely of speech is retaliatory only if the speech is threatening or coercive and, Terrell contends, his alleged statements about Capeheart were neither.

## ANALYSIS

Terrell has moved for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. On a motion to dismiss under Rule 12(b)(6), the court accepts the allegations in the complaint or counterclaim as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *See Marshall-Mosby*, 205 F.3d at 326. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atlantic*, 127 S. Ct. at 1964-65 (2007) (citations omitted).

The Seventh Circuit has interpreted *Bell Atlantic* as follows:

> Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)) (alteration in *Bell Atlantic*). Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14.

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). *See also Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007) (observing that under *Bell Atlantic* a complaint must now contain "enough facts to state a claim for relief that is plausible on its face.").

With the proper standard in mind, the court turns to Terrell's arguments in favor of dismissal.

**I.      Counts II and III: Defamation Claims**

Illinois has long recognized the defense of absolute immunity in defamation actions against government officials. *See Blair v. Walker*, 349 N.E.2d 385, 387 (Ill. 1976). The relevant inquiry is whether the allegedly defamatory statement of the government official was reasonably related to his or her public duties. *See Villagrana v. Village of Oswego*, No. 04 CV 4603, 2005 WL 2322808, at *5 (N.D. Ill. Sept. 22, 2005).

When determining whether a government official's statements were reasonably related to his or her duties, courts look to a number of factors, including whether the statements were made by the government official in his role as a supervisor. *See, e.g., Blair*, 349 N.E.2d at 388 (governor issued press release pursuant to his supervisory role over the Department of Registration and Education); *see also Geick v. Kay*, 603 N.E.2d 121, 128 (Ill. App. Ct. 1992) (mayor's statements were reasonably related to his responsibility of general supervision over all executive officers and employees of the village). Courts also look to whether the statements were made as part of the government official's responsibility to speak on behalf of his department. *See, e.g. Harris*, 646 N.E.2d at 11-12 (applying absolute immunity to detective who acted as department spokesperson and followed department's media policy); *Buckley,* 1996 WL 10899, at *7 (applying absolute immunity to state's attorney for statements related to his duty to inform public of law enforcement efforts). Absolute immunity also shields government officials' public statements made to defend against allegations of wrongdoing. *Valentino v. Vill. of South Chi. Heights*, No. 04 C 2373, 2006 WL 2794931, at *6 (N.D. Ill. Sept. 27, 2006) (statements made by a public official to defend against allegations of wrongdoing are reasonably related to the officials' duties), *rev'd on other grounds*, 575 F.3d 664 (7th Cir. 2009).

Capeheart argues that Terrell's motion to dismiss must be denied for three reasons. First, she contends that the allegations of the complaint provide insufficient information to assess the nature of Terrell's duties and, therefore, the court cannot determine whether Terrell's statements were reasonably related to those duties. However, a careful examination of the allegations of Capeheart's Second Amended Complaint reveals a number of allegations about the scope of Terrell's duties. For instance, Capeheart alleged that Terrell attended the meeting of the Faculty

Council in his official capacity as vice-president of student affairs. The complaint also alleges that Terrell had supervisory responsibility for the university campus police, and that Terrell's statements were made in response to criticisms of a department under his authority.

However, in light of the factors discussed above, Terrell's statement to the Faculty Council that a student had charged Capeheart with stalking does not appear to be reasonably related to Terrell's duties as alleged. Terrell spoke at the council meeting to defend the university police against Capeheart's accusation that the police had harassed members of the student war protest group she oversaw. Statements made by Terrell that the arrests were the result of misconduct by the students were therefore reasonably related to Terrell's supervisory role over campus police and were made to defend against Capeheart's accusations. However, Terrell's allegedly false accusation that Capeheart had been charged with stalking a student shed no light on whether police did or did not mistreat the student war protesters. That statement was therefore not a defense to the accusations of student mistreatment.

Because, on balance, the court's close consideration of the relevant factors do not favor the conclusion that Terrell's allegedly defamatory statement about Capeheart was reasonably related to any of the duties alleged, the court has no basis to conclude that his statements fall under the doctrine of absolute immunity. His motion to dismiss Counts II and III on the basis of absolute immunity is therefore denied.

For the sake of completeness, the court will briefly address Capeheart's other two arguments against dismissal. In her second argument, Capeheart contends that absolute immunity does not shield university vice-presidents. However, absolute immunity has been extended not just to high-level executives, but also a wide range of lower-level government

officials. *See Harris v. News-Sun*, 646 N.E.2d 8, 11-12 (Ill. App. Ct. 1995) (applying absolute immunity to police detective); *Dolatowski v. Life Printing & Pub., Co., Inc.*, 554 N.E.2d 692, 695 (Ill. App. Ct. 1990) (applying absolute immunity to deputy police superintendent). Capeheart has cited no authority to support her contention that absolute immunity could never shield a university vice-president and, therefore, her argument is unavailing.

Next, Capeheart contends that absolute immunity is available only to Terrell for statements made to superiors up the chain of command, and therefore would not shield him from liability for statements made to the entire Faculty Council. However, the cases Terrell relies upon to support his contention address the doctrine of absolute *privilege*, not absolute *immunity*. The doctrines are distinct from one another. For instance, the doctrine of absolute privilege applies to statements made in judicial or quasi-judicial proceedings by private individuals and public officials alike. *See Layne v. Builders Plumbing Supply Co., Inc.*, 569 N.E.2d 1104, 1106 (Ill. App. Ct. 1991). In contrast, absolute immunity applies only to public officials and its application is not restricted to statements made in judicial or quasi-judicial proceedings. *See Zych v. Tucker*, 844 N.E.2d 1004, 1007-08 (Ill. App. Ct. 2006). Because Capeheart's authority is inapposite, this alternative argument against dismissal is also unavailing.

## II.     Count IV: Free Speech Retaliation Claim

In Count IV, Capeheart alleges that Terrell retaliated against her for exercising her right to free speech under the Illinois constitution. Terrell seeks to dismiss Count IV for failure to state a claim, but in support he cites the elements of a retaliation claim under the U.S. Constitution. He never once identifies the elements of a retaliation claim under the Illinois constitution. As a consequence, the parties never focus on relevant inquiries, such as whether

Illinois public policy has been violated by the alleged retaliatory conduct, *see Fellhauer v. City of Geneva*, 568 N.E.2d 870, 875 (Ill. 1991) ("the mere citation of a constitutional or statutory provision in a complaint will not by itself be sufficient to state a cause of action for retaliatory discharge"), or whether, under Illinois law, a failure to promote can ever serve as a basis for a retaliation claim, *see Hindo v. Univ. of Health Sciences/Chicago Medical Sch.*, 604 N.E.2d 463, 468 (Ill. App. Ct. 1992) ("Illinois courts do not recognize a cause of action for retaliatory demotion.").

Because Terrell has failed to address the applicable state law, he has forfeited his argument that Count IV should be dismissed for failure to state a claim. Accordingly, his motion to dismiss Count IV is denied.

## CONCLUSION

For the reasons stated above, Terrell's motion to dismiss Counts II, III and IV of Capeheart's Second Amended Complaint is denied.

ENTER:

DATE: March 9, 2010

_Blanche M. Manning_
Blanche M. Manning
United States District Judge