# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| LORETTA CAPEHEART, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 CV 1423 |
| | ) | Judge Blanche M. Manning |
| SHARON K. HAHS, LAWRENCE P. | ) | |
| FRANK and MELVIN C. TERRELL, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Loretta Capeheart is a tenured professor at Northeastern Illinois University, and is faculty advisor to a group of student activists. Capeheart and the students had protested on-campus recruiting by the military and the CIA and, during one protest, some of the students were arrested by campus police. After she spoke out against the arrests, Capeheart alleges that she was denied a promotion and that a university vice-president intimated that she is a stalker. She has sued university administrators for violating her right to free speech under both the U.S. and Illinois constitutions, as well as defamation. Both she and the defendants have moved for summary judgment. For the reasons that follow, Capeheart's motion for summary judgment is denied, while the defendants' motions are granted.

## FACTS

The following facts are undisputed except where noted. Capeheart has been a professor in the department of Justice Studies at Northeastern Illinois University since September 2002. In addition to teaching, she is a researcher studying social inequality and social change. Her current research includes exploring the impact of social inequality on the incarceration of Latinos. She

has also served on a Latino Education Committee, where she analyzed the adequacy of programs that serve Latino students in the Chicago area.

Since arriving at the university in 2002, Capeheart has served on the Latino and Latin American Studies committee. In 2006, she was elected to a two-year term as a member of the Faculty Council for Student Affairs and, at the same time, served as the vice chair of the Faculty Senate. Since 2006, she has also served as a faculty advisor to the student Socialist Club.

Capeheart is a self-described activist, and has often spoke publicly about or protested various issues on campus, as have the student members of the Socialist Club. For instance, in April 2006, Capeheart joined two students, one of whom was a member of the Socialist Club, in protesting the presence of Army recruiters at the university's annual job fair by distributing leaflets to potential recruitees. Campus police were called and although the students were allowed to remain, officers asked her to leave, which she did. She was not disciplined for the incident at the time.

Capeheart's activism continued in September 2006, when she spoke on campus at a meeting of the Illinois Legislative Latino Caucus, which also featured comments by defendant Lawrence Frank, the university's provost. Frank and Capeheart both addressed questions about the low number of Latino faculty members. While Frank told the caucus that the university's ability to hire more Latino faculty was constrained by budgetary pressures, Capeheart blamed the budgetary pressures that Frank had described on excessive administrative spending.

Then on February 28, 2007, two student members of the Socialist Club protested the presence of the CIA at a recruiting event on campus. An employee working at the event reported being injured during the protest and campus police arrested the two students. Capeheart was not

present at the event but, later that day, she called defendant Melvin Terrell, the vice-president for student affairs, to advocate on behalf of the arrested students.

Capeheart's advocacy continued in the days following the arrests as she (1) requested to meet with Terrell and the dean of students about the arrests, (2) solicited support from the faculty union, and (3) sent e-mails complaining about the arrests to faculty members and university administrators, including defendant Sharon Hahs, the university president. On March 2, 2007, in conjunction with other faculty members in the Justice Studies department, she sent an e-mail university-wide expressing deep concern about the arrests. The e-mail was also published by the student newspaper. The arrests also garnered attention off-campus, including various news reports.

Two weeks after the arrests, on March 12, 2007, Capeheart attended a meeting of the Faculty Council for Student Affairs, of which she was an elected member. Capeheart was one of seven people attending the meeting, which also included Terrell and five other faculty and administrative members. At the meeting, Capeheart questioned Terrell about the students' arrest and criticized the use of campus police against students who protest peacefully.

During his response to Capeheart's questions, Terrell stated that he had received a report from campus police that Capeheart had been stalking a student. The report had been made by a student complaining that members of the Socialist Club had been watching and following employees of the job placement office. The student also reported that Capeheart had chased her down while the student was distributing flyers critical of the Socialist Club.

Capeheart filed a complaint about Terrell referring to her as a stalker with the university's Affirmative Action Office. The office took no action, stating that her complaint did not involve

discrimination or sexual harassment, but the office did determine that "Terrell did act inappropriately by stating before the Faculty Council on Student Affairs that you were the subject of a student complaint that was filed with our campus police. Any official complaint filed with our campus police should never be discussed in a public forum." Pl.'s App. [149-1] Ex. 7 at 2.

Capeheart contends that defendants Frank and Hahs then began retaliating against her for exercising her First Amendment right to speak out against military and CIA recruiting on campus, the arrest of student protesters, and inadequate hiring of Latino faculty members. Specifically, she alleges that even though the Justice Studies department faculty elected her to be their new chair, on August 20, 2007, Frank announced that he had filled the position with someone from outside the department instead. Capeheart contends that the defendants also later refused to appoint her as department coordinator, and denied her a 2007 Faculty Excellence Award for a book she had authored (though she received the award in 2008 after the book had been published).

She has filed suit against Terrell, Hahs and Frank alleging claims of defamation and violation of her right to free speech. Specifically, she seeks (1) to enjoin defendants Hahs and Frank from continuing to retaliate against her for exercising her right to free speech under the U.S. Constitution (Count I); (2) damages from defendant Terrell for defamation *per se* (Count II) and *per quod* (Count III); and (3) damages against Hahs, Frank and Terrell for retaliating against her for exercising her right to free speech under the Illinois Constitution, as well as an injunction to prevent additional retaliation (Count IV). The defendants have filed two motions for summary judgment in which they collectively seek judgment on all of Capeheart's claims against them.

Meanwhile, Capeheart has filed a motion for summary judgment on Count II, her defamation *per se* claim against Terrell.

## ANALYSIS

**I.  Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *See Valenti*, 970 F.2d at 365; *see also Anderson*, 477 U.S. at 248.

Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists. *See Anderson*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

**II.  Retaliation under the U.S. Constitution  (Count I)**

In Count I, Capeheart seeks a permanent injunction against defendants Hahs and Frank to prevent any additional infringement of her right to free speech under the U.S. Constitution. The factors Capeheart must establish to obtain a permanent injunction are similar to the factors for a

preliminary injunction, except that she must show actual success on the merits rather than a likelihood of success on the merits. *See Chicago Teachers Union v. Board of Educ. of The City of Chicago*, No. 10 C 4852, 2010 WL 3927696, at *2 (N.D. Ill. Oct. 4, 2010) ("To obtain a permanent injunction, the [plaintiff] must demonstrate: (1) success on the merits; (2) that remedies available at law are inadequate; (3) that the benefits of granting an injunction outweigh any resulting injury to the [defendant]; and (4) that an injunction will not harm the public interest.").

Capeheart's claim for a permanent injunction falters on the first factor because she cannot establish success on the merits of her underlying claim that the defendants have retaliated against her. To establish a claim of retaliation under the First Amendment, a plaintiff must show each of the following: (1) her speech was protected; (2) the protected speech was the "but for" cause of the allegedly retaliatory conduct; and (3) she suffered a deprivation because of the conduct. *See Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010).

However, when the plaintiff is a government employee, her speech made pursuant to her professional responsibilities is not protected by the First Amendment. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Thus, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Morales v. Jones*, 494 F.3d 590, 595 (7th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 421). "Determining what falls within the scope of an employee's duties is a practical exercise that focuses on the duties an employee actually is expected to perform." *Id.* at 596 (internal quotation marks and citation omitted).

The defendants contend that Capeheart's speech all related to her responsibilities as a faculty member, researcher, and club advisor and, therefore, she cannot establish a claim under the First Amendment. Therefore, the court must first determine whether the speech for which Capeheart contends she was retaliated against was made pursuant to her professional responsibilities. According to Capeheart, she was retaliated against for the following speech: (1) her participation with two students, including a Socialist Club member, in a protest over military recruiting on campus in April 2006; (2) her September 2006 comments during a meeting of the Illinois Latino caucus on the university's failure to attract more Latino students and faculty members; and (3) her criticism beginning in late February 2007 of the university's use of campus police to arrest students who peacefully protest, including two members of the Socialist Club.

The allegations of the complaint and the evidence identified by the parties establishes that the speech at issue was made pursuant to Capeheart's professional responsibilities. According to her complaint, the defendants targeted her for retaliation "particularly with regarding to her advising the student club that has taken a role in leafleting military and CIA recruiters at open job fairs on NEIU's campus." 2d Am. Compl. [88-1] ¶ 12. Capeheart also admits that statements she made following the February 2007 arrest of two members of the Socialist Club were her "attempt[s] to advocate on behalf of the arrested students." Joint Statements of Fact [145-1] ¶ 21. Thus, even according to Capeheart, her involvement in protests over recruting and her advocacy on behalf of student protesters were part of her role as advisor to the Socialist Club.

Nevertheless, Capeheart contends that her speech was protected because *Garcetti* does not apply to teachers at public universities, citing as support Justice Souter's concerns in his dissent in *Garcetti*: "I have to hope that today's majority does not mean to imperil First

Amendment protection of academic freedom in public colleges and universities, whose teachers necessarily speak and write 'pursuant to . . . official duties.'" *Garcetti*, 547 U.S. at 438 (J. Souter, dissenting) (internal citation omitted).  However, since *Garcetti*, courts have routinely held that even the speech of faculty members of public universities is not protected when made pursuant to their professional duties.  *See, e.g., Abcarian v. McDonald*, 617 F.3d 931, 937 (7th Cir. 2010) (applying *Garcetti* to faculty member of the University of Illinois College of Medicine at Chicago); *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009) (applying *Garcetti* to faculty member who advised students in disciplinary proceedings).

Accordingly, Capeheart's speech regarding military and CIA recruiting on campus and the university's treatment of student protesters is not protected under the First Amendment.

The defendants also contend that when Capeheart spoke out against the university's failure to hire more Latino faculty members, she did so pursuant to her professional responsibilities.  However, the defendants have presented no evidence that Capeheart had any responsibilities to oversee or advise on hiring Latino faculty.  Although her job required her to conduct research, her research involved the social inequalities faced by Latino inmates, not Latino faculty members.  Accordingly, the evidence does not establish that her speech before the Illinois Latino caucus was pursuant to her professional responsibilities.

However, her remarks before the Illinois Latino caucus occurred in September 2006, while the allegedly retaliatory decisions to deny her the position as department chair and to deny her a Faculty Excellence award began in August 2007.  This nearly one-year gap is too lengthy to support a finding that her statements to the Illinois Latino were the "but for" cause of the allegedly retaliatory conduct one year later.  *See Oest v. Ill. Dept. of Corrs.*, 240 F.3d 605, 616

(7th Cir. 2001) (reviewing Title VII cases in which gaps of 12, 8, 6, 5, 4, and even 3 months undercut any finding of causation or retaliation); *see also Spiegla v. Hull*, 371 F.3d 928, 943 n. 10 (7th Cir. 2004) (noting that the causation analysis in First Amendment retaliation cases tracks the retaliation analysis in Title VII cases). In the absence of any other evidence linking her statements before the Illinois Latino caucus to the allegedly retaliatory decisions that began in August 2007, Capeheart has failed to establish "but-for" causation and, therefore, has failed to establish any basis for her First Amendment claim.

In conclusion, Capeheart has failed to establish evidence that the defendants retaliated against her for exercising her rights to free speech under the First Amendment. Accordingly, because she cannot establish actual success on the merits of her retaliation claim, she is not entitled to a permanent injunction and the defendants' motion for judgment on Count I is granted.

**III.   Defamation Claims Against Terrell  (Counts II & III)**
**IV.   Retaliation Claim under Illinois Constitution  (Count IV)**

Because the court has granted judgment to the defendants on Capeheart's federal claim in Count I, in its discretion the court will not exercise its supplemental jurisdiction over her remaining state law claims in Counts II through IV. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons stated, defendants Hahs and Frank's motion for summary judgment [135-1] is granted as to Count I. Because judgment is entered in favor of Hahs and Frank, their motion to strike [200-1] certain of Capeheart's Rule 56.1 statements and responses is denied as moot.

Count I was the only federal claim alleged, and the court declines to exercise supplemental jurisdiction to consider the remaining state law claims in Counts II through IV so

those claims are dismissed. The dismissal of the state law claims is without prejudice to Capeheart refiling her claims in state court. As a result of the dismissal of Counts II through IV, the motions for summary judgment on those counts filed by defendant Terrell [139-1] and plaintiff Capeheart [140-1], and Terrell's motion to strike certain of Capeheart's Rule 56.1 statements [190-1] are denied without prejudice. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.

ENTER:

DATE: February 14, 2011         _____
Blanche M. Manning
United States District Judge